12092/TRW-JAM

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| CRISTA E. NOEL,<br><br>　　　　Plaintiff,<br><br>vs.<br><br>BRUNO COLTRI,<br><br>　　　　Defendant. | No. 10-cv-08188<br><br>Judge Sara L. Ellis |

**DEFENDANT'S MEMORANDUM OF LAW IN SUPPORT OF HIS
MOTION FOR SUMMARY JUDGMENT**

Defendant, Bruno Coltri ("Ofc. Coltri"), for his memorandum of law in support of his motion for summary judgment, states as follows.

**Introduction**

On January 1, 2009, Crista Noel was arrested for battery and resisting arrest after inserting herself into a friend's traffic stop. After seeing that her friend, Pamela Tolbert, had been pulled over on Cermak Road by Ofc. Newton of the Westchester Police Department, Ms. Noel pulled her car in front of the Tolbert vehicle and stopped on the roadway next to a "No Parking" sign. She stayed there until Ofc. Coltri arrived to assist Ofc. Newton.

After initially arguing with Ofc. Coltri about moving her car off the busy street and from in front of the "No Parking" sign, Noel drove around the corner and pulled into an adjacent parking lot. Ofc. Coltri followed her around the corner. Enraged in believing that she also was being written a ticket, she got out of her car, demanding to know whether Ofc. Coltri was writing her a ticket. Dissatisfied with his lack of response, she continued toward Ofc. Bruno, who got out of his squad

car when he saw her get close, and bumped him with her chest as she continued to confront him. When he attempted to take her into custody, Noel responded by slapping and kicking Ofc. Coltri. She stopped only when Ofc. Newton, now aware of the confrontation, came to assist with his Taser in hand. At her criminal trial, Noel was acquitted of felony battery, but convicted of resisting arrest. The appellate court affirmed her conviction, and in its ruling noted that, "It was only after [Noel] refused to cooperate with the arrest that Coltri used any force at all against [Noel], and, even then, the force was not excessive[.]" For the reasons that follow, Ofc. Coltri is now entitled to summary judgment as a matter of law.

**Factual Background**

On January 1, 2009, Noel and her friend, nonparty Pamela Tolbert, were traveling in separate vehicles eastbound on 22nd Street/Cermak Rd. in Westchester, Illinois. (SOF[1] ¶¶ 1, 4) Tolbert was pulled over for speeding[2] by Westchester Police Ofc. Russell Newton. (SOF ¶ 1) Cermak is a four lane, fast moving roadway with no parking on either side. (SOF ¶ 17) When Ofc. Newton pulled over Ms. Tolbert, Noel pulled her car in front of Tolbert's vehicle and stopped near a "No Parking" sign. (SOF ¶¶ 5-6) Ofc. Newton requested a backup unit, because he was concerned and did not know why another vehicle had now also stopped. (SOF ¶ 8) Ofc. Bruno Coltri arrived as the backup unit. (SOF ¶ 9) After speaking with Ofc. Newton, Ofc. Coltri then spoke with Noel . (SOF ¶ 12)

Ofc. Coltri pulled alongside Noel's vehicle, rolled down his window, and asked if he could help her, to which she responded "No. May I help you?" (SOF ¶ 13) He asked again, "May I help you?" and she responded again, "No. May I help you?" (SOF ¶ 13) Ofc. Coltri then asked Noel if

---

[1] The parties' joint statement of undisputed materials facts is hereafter abbreviated to "SOF."
[2] Ms. Tolbert does not deny that she was speeding, and has since paid her ticket. (SOF ¶ 3)

2

she saw the "No Parking" sign. (SOF ¶ 14) Noel said she did, but denied that she was "parked," contending that she was "standing." (SOF ¶¶ 14-15) Ofc. Coltri told her, "Pull your car around the corner or I'm going to give you a ticket." (SOF ¶ 16) Noel then pulled around the corner and into a parking lot. (SOF ¶ 18) Ofc. Coltri pulled his vehicle into the entranceway of the parking lot and began looking up Noel's license plate on his in-car computer, so that he could determine who owned the car and who he was speaking with. (SOF ¶ 24) When Ofc. Coltri looked up from his computer, he heard screaming, and saw Noel out of her car coming toward him. He could hear her "yelling some things at [him]." (SOF ¶ 25).

As Noel approached his squad car, she hollered, "Are you writing me a ticket?"[3] (SOF ¶ 26) Noel believed that Ofc. Coltri did not hear her because she was still near her car, so she asked him the question a second time. (SOF ¶¶ 26-28) Ofc. Coltri was inside his car with the door closed. Noel continued to approach. (SOF ¶ 28-29) Noel testified that Ofc. Coltri's only response to her was, "What?" (SOF ¶ 30) Ofc. Coltri observed Noel approach him with her arms extended. He saw that she had something in her hand, but did not know what it was. (SOF ¶ 32) Noel approached the point where she near the rear passenger side door of the squad car, "still asking him why he was being so disrespectful, because he hadn't answered me." (SOF ¶ 33) As Noel got closer, Ofc. Coltri exited the vehicle and moved to the rear quarter panel of the car on the driver's side. (SOF ¶ 34) Noel then walked "very quickly" toward Ofc. Coltri and chest bumped him. (SOF ¶ 36)

When Noel made contact with Ofc. Coltri, he told her she was under arrest. He attempted to take her into custody, but as he tried to grasp her hands to place handcuffs on her, she resisted

---

[3] The parties dispute what plaintiff said in this exchange. According to Ofc. Coltri, the plaintiff yelled, "Are you writing me a parking ticket? You better not be writing me a motherfucking parking ticket!" (Ex. C at p. 13) For purposes of summary judgment, defendant relies upon the plaintiff's version of this exchange. (SOF ¶ 26)

3

and pulled away. (SOF ¶ 36) Noel struck him with open hand slaps, closed hand slaps or punches and kicks to his lower legs. (SOF ¶ 36) Noel claims she told him that she was, not resisting arrest. (SOF ¶ 38) Coltri was eventually able to position the plaintiff face down on the hood of the squad car. (SOF ¶ 39) Ofc. Newton had approached the scene in response to Coltri's request for backup, with his Taser in hand. (SOF ¶¶ 40-41) Noel saw the Taser. (SOF ¶ 41) At that point, Noel allowed Ofc. Coltri to handcuff her. (SOF ¶ 42) The entire incident lasted approximately one minute. (SOF ¶ 43) Noel's only injuries were an abrasion to her left temple, bruising of her upper eyelid, and a hematoma to her left thigh. The bruising was resolving within five days of the arrest. (SOF ¶ 49) Following a bench trial, Cook County Circuit Judge Thomas M. Tucker found Noel guilty of a misdemeanor for resisting a peace officer and acquitted her of the felony[4] battery charge. (SOF ¶¶ 55-56) Noel appealed her conviction, but the appellate court affirmed. (SOF ¶ 57)

## Summary Judgment Standard

In a §1983 action, whether the use of force is unconstitutional is a legal question, not a factual question. *Bell v. Irwin*, 321 F.3d 637, 640 (7th Cir. 2003). "[T]he right question is how things appeared to objectively reasonable officers at the time of the events, *not* how they appear in the courtroom to a cross-section of the civilian community." *Id.* (emphasis in original.) "[W]hen material facts (or enough of them to justify the conduct objectively) are undisputed, then there would be nothing for a jury to do except second-guess the officers, which *Graham* held must be prevented." *Id.* In other words, "[j]udges rather than juries determine what limits the Constitution places on official conduct." *Id.* at 641. Summary judgment must be granted where "the pleadings,

---

[4] A misdemeanor battery charge becomes a felony charge when committed against a "peace officer…while such officer…is engaged in the execution of any official duties including arrest or attempted arrest[.]" 720 ILCS 5/12-4(e)(2) (LexisNexis 2009) Because Section 5/12-4 has since been amended, defendant cites to the statute as it existed when Noel was charged in 2009.

4

discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *Vasquez v. Hernandez*, 60 F.3d 325, 328 (7th Cir. 1995). A fact is "material" when it might affect the outcome of the suit. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute over such material facts is "genuine" if the evidence is such that a reasonable trier of fact could find in favor of the nonmoving party. *Id.* Where there is no genuine issue of material fact, the Court shall enter summary judgment. Fed. R. Civ. Proc. 56(c).

## Argument

### I. Coltri Did Not Use Excessive Force as a Matter of Law.

All of Ofc. Coltri's conduct was reasonable under a *Graham* analysis, and the *Heck* doctrine prohibits plaintiff from now contesting any of the material facts. *Graham v. Connor*, 490 U.S. 386, 396-97 (1989); *Heck v. Humphrey*, 512 U.S. 477, 487 (1994). A *Graham* analysis requires an evaluation of, "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Moriconi v. Koester*, 659 F. App'x 892, 895 (7th Cir. 2016) (*citing Graham*, 490 U.S. at 396). Here, by virtue of the findings of the criminal court, it is undisputed that Noel pulled away from Ofc. Coltri as he tried to handcuff her, resisting arrest with slaps and kicks. The force Ofc. Coltri used was reasonable as a matter of law.

Noel cannot contest that she resisted based on the Supreme Court's decision in *Heck*. *Okoro v. Callaghan*, 324 F.3d 488, 489 (7th Cir. 2003). In *Okoro*, the Seventh Circuit explained and applied the *Heck* doctrine, holding that the district court erred when it declined to dismiss a complaint pursuant to *Heck*. *Okoro*, 324 F.3d at 489. There, the plaintiff was convicted of selling heroin

5

to the police. *Id.* at 489. He brought a civil suit and claimed that he was framed, and that he was trying to sell gems to the officers (instead of drugs), but that the police stole the gems from him. *Id.* He sued to recover the gems or their monetary value. *Id.* The officers pleaded *Heck* as an affirmative defense. They contended that plaintiff's claims necessarily implied that his conviction was invalid. *Id.* at 489-90. The trial court rejected that defense, finding that there was a "theoretical possibility" that the plaintiff tried to sell *both* drugs and gems. *Id.* at 490. The Seventh Circuit held that this was error, because the plaintiff contended that he did not sell drugs at all, only gems, and so the court erred when it considered a "theoretical possibility." *Id.* That is, "if [plaintiff] makes allegations that are inconsistent with the conviction's having been valid, *Heck* kicks in and bars his civil suit." *Id.*

Where the excessive force allegedly takes place as the officer is executing the arrest, a conviction for resisting arrest necessarily means that an officer did not use excessive force. *See Robinson v. Lother*, 2006 U.S. Dist. LEXIS 6453, at *10 (N.D. Ill. 2006). This is because an arrestee may not resist an arrest—even an unlawful arrest—unless he is defending against an officer's use of excessive force. *Id.*; *People v. Williams*, 267 Ill.App.3d 82, 88 (2nd Dist. 1994); *see also City of Champaign v. Torres*, 214 Ill. 2d 234, 242 (2005); *see also People v. Jones*, 2015 IL App (2d) 130387, ¶ 23-24; 720 ILCS 5/7-7; 720 ILCS 5/7-5. Accordingly, a conviction for resisting arrest bars a later claim for excessive force during that arrest pursuant *Heck*. *Robinson*, 2006 U.S. Dist. LEXIS 6453, at *11

In *Robinson*, the court dismissed a claim for excessive force, because doing so would invalidate plaintiff's conviction for resisting arrest. *Id.* The plaintiff alleged that the officers, without provocation, attacked her, punched her, and tackled her to the ground, held her there, and then

6

pepper sprayed her in the face, twice. *Id.* She was charged with, among other crimes, battery and resisting arrest. *Id.* at 3-4. During her criminal trial (similar to here), a jury found her guilty of resisting arrest, but acquitted her of battery and all other charges. *Id.* at 6. She sued the arresting officers, alleging excessive force and unlawful arrest. *Id.* at 7. The court dismissed the complaint, finding that a "successful prosecution of the plaintiff's excessive force claims would necessarily imply that the police officers used unreasonable force and, therefore, that the plaintiff's conviction for resisting a peace officer was erroneous." *Id.* at 11(*citing Okoro*, 324 F.3d at 490).

Where courts have rejected summary judgment on *Heck* grounds, they have done so when a plaintiff can point to facts in the record to show that excessive force was used either before or after the subject arrest. *See Parks v. Chicago*, 2011 U.S. Dist. LEXIS 103832, at *7-8 (N.D. Ill. 2011). In *Parks*, plaintiff directed his van at a police officer following an undercover heroin bust, and the officer responded by firing three bullets at the plaintiff's van. *Id.* at 2-3. Significantly, the plaintiff had pleaded guilty to aggravated assault, *i.e.*, that he lunged his van at the arresting officer. *Id.* at 4-5. In his §1983 lawsuit, plaintiff testified that his van was stopped at the time that the officer shot at him. *Id.* at 2-3. In ruling on the city's motion for summary judgment on the excessive force claim, the court relied on the evidence in the record which supported plaintiff's claim that he lunged the van at the officer, *then* brought it to a stop, and *only then* did the officer shoot. *Id.* at 4-5. However, applying *Heck*, the court barred plaintiff from denying that he actually used his vehicle to lunge at the officer. *Id.* at 5-6.

In this case, and unlike the plaintiff in *Parks*, Noel cannot point to facts in the record which might independently support her conviction so as to avoid *Heck's* application. The criminal complaint makes clear that she was charged with resisting arrest based on her "pulling away from and

7

striking at Ofc. Coltri in a manner to avoid being taken into custody." (SOF ¶ 51; Ex. J) The evidence submitted to the criminal court was consistent with this charge. The resisting arrest conviction was premised entirely upon Noel's conduct throughout Ofc. Coltri's attempt to take her into custody—her resisting, pulling away from and striking Ofc. Coltri as he attempted to handcuff her. (SOF ¶ 36) The facts necessary to support her conviction, and which cannot now be rebutted, are that when Ofc. Coltri attempted to arrest her, she pulled away, slapped and struck him in response. As in *Robinson*, Noel's attempt to argue that Coltri's use of force in executing her arrest was excessive, is barred by *Heck*. *Robinson* at *11; *see also Okoro*, 324 F.3d at 490.

Any claim of excessive force has already been foreclosed by Noel's criminal trial, when Judge Tucker found Noel guilty of resisting arrest. In doing so, Judge Tucker necessarily determined that Noel was not defending herself against Coltri's use of "excessive force" as that would have been a defense to the crime. *Williams*, 267 Ill.App.3d at 88 (one is permitted to resist arrest when faced with excessive force). Indeed, the court of appeals applied this rationale in affirming Noel's conviction, finding, that *"[Noel] was not faced with an officer's use of excessive force…It was only after [Noel] refused to cooperate with the arrest that Coltri used any force at all against [Noel], and, even then, the force was not excessive…Self-defense is not an appropriate theory where a defendant resists arrests [sic] and then officers use force to effectuate the arrest."* (emphasis added) (SOF ¶ 57); *People v. Noel*, 2012 IL App (1st) 103302-U, ¶ 23. The *Heck* doctrine prohibits her from now trying to undermine that conviction. *Okoro*, 324 F.3d at 490.

The record is consistent with Ofc. Coltri's use of reasonable force to handcuff a resisting arrestee and requires summary judgment under a *Graham* analysis. What Noel contends to be excessive force, was actually the reasonable use of force to take a resisting arrestee into custody.

8

Ofc. Coltri tried to grasp her hands, tried to place her in handcuffs, and called for backup when she continued to slap him and pull away from him. (SOF ¶ 36) Once Noel observed Ofc. Newton with his Taser in hand, she stopped struggling and Ofc. Coltri was finally able to place handcuffs on her. (SOF ¶¶ 39-42)  All of Noel's claimed injuries were minor. (SOF ¶ 49) Ofc. Coltri ceased all force once Noel was in handcuffs. (SOF ¶ 36, 37, 40-42) The *Graham* factors favor Ofc. Coltri and require entry of summary judgment in his favor. *See Graham*, 490 U.S. at 396-97. ("Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates the Fourth Amendment.")

## II.     Plaintiff was Not "Illegally Seized" in the Parking Lot.

Noel was not illegally seized when she was instructed to move her car off Cermak Road. To succeed on a claim of illegal seizure, a plaintiff must show both that he was actually seized, and that the seizure was unreasonable. *Leaf v. Shelnutt*, 400 F.3d 1070, 1089 (7th Cir. 2005). "A person is seized 'only if, in view of all of the circumstances surrounding the incident, a reasonable person [in the subject's position] would have believed that he was not free to leave.'" Id. (brackets in original.) Here, no reasonable person could believe that Noel was not free to leave based on Coltri telling her, "Pull your car around the corner or I'm going to give you a ticket," in response to her parking next to a "No Parking" sign. No facts support such a claim.

Noel voluntarily chose to stop her vehicle when Tolbert was pulled over. (SOF ¶¶ 4-5) When Ofc. Coltri told her to "pull around the corner *or* I'm going to give you a ticket," it was Noel who chose to pull into the parking lot. (emphasis added.) (SOF ¶¶ 18-19) She never attempted to leave the parking lot in her car, instead she chose to get out and confront Ofc. Coltri. When she got out of her car, it was to ask Coltri if he was "writing her a ticket" not whether or not she could

9

leave. (SOF ¶28) Ofc. Coltri never requested her license or registration, displayed his lights or siren, or ordered Noel to stay in her vehicle. She was always free to leave the parking lot and was never seized, let alone unreasonably so.

### III. There is No Evidence to Support Plaintiff's Claim of Malicious Prosecution.

There is no evidence in the record to support Noel's claim of malicious prosecution. A malicious prosecution claim must be decided upon state law. *Newsome v. McCabe*, 256 F.3d 747, 751 (7th Cir. 2001). In Illinois, a malicious prosecution claim requires a showing of each of the following elements: (1) the commencement or continuance of an original criminal or civil judicial proceeding by the defendant; (2) the termination of the proceeding in favor of the plaintiff; (3) the absence of probable cause for such proceeding; (4) the presence of malice; and (5) damages resulting to the plaintiff. *Joiner v. Benton Community Bank*, 82 Ill.2d 40, 45 (1980)  Here, Noel cannot establish these elements.

With respect to the resisting arrest charge, Noel's conviction alone is sufficient to defeat her malicious prosecution claim. *Joiner*, 82 Ill.2d at 45; *Vandenburgh v. Ogden*, 2016 U.S. Dist. LEXIS 12493, *18. A plaintiff who has been convicted on a charge cannot later pursue a malicious prosecution claim on that same charge, because such a plaintiff will never satisfy the second element of the claim, *i.e.*, that the criminal proceedings terminated in a manner favorable to plaintiff. *Id.* Here, Noel was convicted of resisting arrest, and so her claim fails as a matter of law as to that charge. (SOF ¶ 55-56).

As for her battery charge, plaintiff's malicious prosecution claim likewise fails as a matter of law because Noel cannot establish either a lack of probable cause or malice. As for probable cause, the Seventh Circuit has stated, "[t]o form a belief of probable cause, an arresting officer is

not required…to act as a judge or jury to determine whether a person's conduct satisfies all of the essential elements of a particular statute." *Stokes v. Bd. of Educ.*, 599 F.3d 617, 622-23 (7th Cir. 2010). Instead, probable cause involves the exercise of judgment, which "turn[s] on the assessment of probabilities in particular factual contexts--not readily, or even usefully, reduced to a neat set of legal rules." *Id.* In Illinois, "a person commits aggravated battery if he or she… [k]nows the individual harmed to be an officer or employee of the State of Illinois, a unit of local government, or school district engaged in the performance of his or her authorized duties as such officer or employee[.]" 720 ILCS 5/12-4(b)(18) So long as a reasonable person in the arresting officer's position could believe that a crime had been committed, then a malicious prosecution claim will fail as a matter of law. *Stokes* at 622-23, 626.

Further, a malicious prosecution claim will fail when the record does not support a finding of malice. *Scott v. Bender*, 948 F. Supp. 2d 859, 873 (N.D. Ill. 2013); *Baghadadilian v. Libby*, 1994 U.S. Dist. LEXIS 8377, at *13 (N.D. Ill. 1994). ("Malice is distinct from probable cause and must be established for a malicious prosecution charge to be successful.") In Illinois, "[m]alice is defined as the initiation of a prosecution for any reason other than to bring a party to justice." *Holland v. City of Chicago*, 643 F.3d 248, 255 (7th Cir. 2011).

Here, there is nothing in the record to support Noel's contention that Ofc. Coltri lacked probable cause to arrest her for battery or that he did so with malice. In this case, Noel walked very briskly to Ofc. Coltri, who was seated in his squad car. (SOF ¶ 36) She hollered at him in a raised voice. (SOF ¶¶ 25-29) Once Ofc. Coltri exited his squad car, Noel chest bumped him and, when he tried to handcuff her, hit him with open hand slaps, closed handed slaps, and kicks. (SOF ¶ 36) Under *Heck*, Noel is barred from contesting these facts. When Noel appealed her conviction,

the appellate court found that these facts supported her conviction. *Noel*, 2012 IL App (1st) 103302-U, ¶ 23; (SOF ¶ 57) Noel is prohibited from disputing these facts now, because the criminal courts relied upon this evidence when it affirmed her conviction on the related charge of resisting his arrest. *See Vandenburgh*, 2016 U.S. Dist. LEXIS 12493, *18. (*Heck* applies to malicious prosecution claims.) Simply put, Ofc. Coltri had probable cause to charge a criminal suspect for battery, because she struck him.

Additionally, there is no evidence in the record to support a finding that Ofc. Coltri acted with malice. He informed her that she could not park on the street—underneath a "No Parking" sign, no less. (SOF ¶¶ 6, 14) Noel argued with him over whether she was parking or standing, but eventually moved her vehicle to a nearby parking lot. (SOF ¶ 15) As Ofc. Coltri was sitting in his squad car, it was *Noel* who approached him and shouted at him. (SOF ¶¶ 25-29) He only exited his car when Noel came toward him while he was still sitting in his squad car, shouting at him. (SOF ¶ 34) He only arrested Noel after she initiated the altercation by chest bumping him. She then slapped and kicked him when he tried to take her into custody. (SOF ¶ 36) Ofc. Coltri did not act with malice, but instead acted only to "bring a party to justice." *See Holland*, 643 F.3d at 255.

**IV. Plaintiff's Due Process and Equal Protection Claims Fail as a Matter of Law.**

Noel cannot succeed on her due process or equal protection claims, because she received a fair trial and because she has not identified any similarly situated person who was treated differently. To succeed on a claim under the due process clause, the plaintiff must show that she was deprived of a fair trial. *Carroccia v. Anderson*, 249 F. Supp. 2d 1016, 1023 (N.D. Ill. 2003); *Ienco v. City of Chicago*, 286 F.3d 994, 999 (7th Cir. 2002); *Newsome v. McCabe*, 256 F.3d 747, 752

(7th Cir. 2001) That is, "Section 1983 provides a remedy for certain forms of *trial-based* government misconduct based on violations of due process—not claims of malicious prosecution." *Ienco*, 286 F.3d at 998 (*citing Newsome*, 256 F.3d at 751-52)). (emphasis added.) Hence, a due process claim may be available when there is evidence that the defendant, "withheld information or evidence necessary for the fair and impartial trial guaranteed by the U.S. Constitution." *Id.*

Here, Noel cannot point to any evidence in the record to show that she did not receive a fair trial. She was represented by a private attorney, her attorney cross-examined the prosecution's witnesses, and called nonparty witnesses of his own—Pamela Tolbert, EMT Matthew Martin, Westchester Police Officer Sgt. LaManna, and the plaintiff's former co-worker as a character witness. (SOF ¶ 55) Noel testified in her own defense. (SOF ¶ 55) She received a fair trial, but is simply not satisfied with its outcome. This does not rise to the level of a constitutional violation.

Noel's equal protection allegations similarly fail. In general, an officer's subjective motivations in arresting a criminal suspect are not to be considered when judging the constitutionality of his actions. *United States v. Edwards*, 769 F.3d 509, 516 (7th Cir. 2014), *citing Whren v. United States*, 517 U.S. 806, 812 (1996). Instead, courts will judge the constitutionality of a search or seizure based on viewing the facts *objectively* rather than considering the subjective motivations of the arresting officer. *Edwards*, 769 F.3d at 516; *Whren*, 517 U.S. at 812. To the extent that an officer's subject motivation comes into play at all in a class of one equal protection analysis, "[a]ll it takes to defeat [a class of one equal protection] claim is a conceivable rational basis for the difference in treatment. If we can come up with a rational basis for the challenged action, that will be the end of the matter—animus or no." *Noble v. Vill. of Elliott*, 605 F. App'x 572, 577 (7th Cir. 2015)

13

In this case, Noel's equal protection claims cannot stand, because they are all based allegations of Ofc. Coltri's subjective motivations, which is not a factor in the constitutionality of his decision to arrest the plaintiff. *Edwards*, 769 F.3d at 516; *Whren*, 517 U.S. at 812. To the extent that any personal or subjective motivation is an issue at all, then plaintiff's claim still fails. First, she has not identified any similarly situated person who was treated differently than she was. There is nothing in the record to establish that plaintiff was treated differently than some other group of similarly situated individuals. Moreover, there is a rational basis to support Ofc. Coltri's decision to arrest the plaintiff—the simple fact that she struck him. (SOF ¶ 36)

### V. Plaintiff's Claims under the First Amendment Fail Because She Did Not Engage in Any Protected Speech Before Her Arrest, and Her Arrest Was Supported by Probable Cause as a Matter of Law.

There is no evidence in the record to support Noel's claims for a First Amendment violation. Plaintiffs must prove three elements to establish a case of retaliatory arrest in violation of the First Amendment: (1) they engaged in activity protected by the First Amendment; (2) they suffered a deprivation that would likely deter First Amendment activity; and (3) the First Amendment activity was at least a motivating factor in the police officer's decision. *See Peraica v. McCook*, 124 F.Supp.3d 816, 823 (N.D. Ill. 2015); *Thayer v. Chiczewski*, 705 F.3d 237, 251 (7th Cir. 2012). Even if Noel could identify protected speech made prior to her arrest, her claim would still fail as a matter of law because Ofc. Coltri had probable cause to arrest her. *Hartman v. Moore*, 547 U.S. 250, 265-66 (2006) (to support a claim that plaintiff was prosecuted in retaliation for exercising First Amendment rights, "an absence of probable cause…must be pleaded and proved."); *Williams v. Davis*, 609 F. App'x 865, 867 (7th Cir. 2015).

14

The third element in particular requires that the plaintiff "show a causal connection between a defendant's retaliatory animus and subsequent injury[.]" *Bianchi v. McQueen*, 818 F.3d 309, 321 (7th Cir. 2016) (*citing Hartman*, 547 U.S. at 259). "Even if retaliatory animus can be shown, the retaliation must be the cause-in-fact of the claimed injury." *Id.* (*citing Thayer v. Chiczewski*, 705 F.3d 237, 252 (7th Cir. 2012). That is, "[i]f retaliation is not the but-for cause of the arrest, 'the claim fails for lack of causal connection between unconstitutional motive and resulting harm, despite proof of some retaliatory animus in the official's mind.'" *Id.* (*quoting Hartman*, 547 U.S. at 260). There must be a "but for" causal connection between the subjective motive and the claimed unconstitutional conduct. *Id.*

In this case, there is no evidence in the record to show either a retaliatory animus against Noel, nor is there any evidence to establish "but for" causation. The only speech between Noel and Coltri *before* the arrest was *de minimis* and concerned whether Noel was parked or standing. (SOF ¶¶ 12-16) Further, Noel testified that she thought Coltri did not even hear what she said to him as she approached him in his car immediately before her arrest. (SOF ¶ 27) There is no evidence that Coltri arrested her in retaliation for anything she said before her arrest. Instead, he arrested her because she battered him and resisted his attempt to place her in custody. (SOF ¶ 36)

### Conclusion

For all of the reasons set forth, Ofc. Coltri requests that summary judgment be entered in his favor as to all claims against him.

Respectfully Submitted,
**Langhenry, Gillen, Lundquist & Johnson, LLC**

By: /s/ John A. Masters
John A. Masters

Thomas R. Weiler (Atty No. 06184955)
John A. Masters (Atty No. 6299434)
Maryam H. Arfeen (Atty No. 6316640)
LANGHENRY, GILLEN, LUNDQUIST & JOHNSON, LLC
Attorneys for Defendant, Officer Bruno Coltri
33 North Dearborn Street - Suite 1600
Chicago, IL 60602
Tel: (312) 704-6700

## **CERTIFICATE OF SERVICE**

      Please take notice that the undersigned, an attorney, hereby certifies that he caused the attached **Memorandum of Law in Support of Summary Judgment** to be served upon counsel of record in the above captioned matter at the addresses listed on this certificate of service by using the CM/ECF system on this **18th** day of **April, 2017.**

**Counsel for plaintiff**
Brendan Shiller
Shiller*Preyar Law Offices
601 S. California Ave.
Chicago, IL 60612
(312) 226-4590

                                                                 By: /s/ John A. Masters_____
                                                                    John A. Masters

Thomas R. Weiler (Attorney No. 06184955)
John A. Masters (Attorney No. 6299434)
Maryam H. Arfeen (Atty No. 6316640)
**Langhenry, Gillen, Lundquist & Johnson, LLC**
Attorneys for the defendant, Bruno Coltri
33 North Dearborn Street - Suite 1600
Chicago, IL 60602
Tel: (312) 704-6700