12092/TRW-JAM

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

CRISTA E. NOEL,

    Plaintiff,

vs.

BRUNO COLTRI,

    Defendant.

No. 10-cv-08188

Judge Sara L. Ellis

**JOINT STATEMENT OF MATERIAL FACTS**

Defendant and Plaintiff, by their respective counsel, pursuant to Local Rule 56.1(a) and this court's standing orders on summary judgment practice now file their Joint Statement of Material Facts. In support thereof, the parties state:

1. On or about January 1, 2009, non-party Pamela Tolbert was traveling eastbound on 22nd St. / Cermak in Westchester, Illinois, when she was pulled over for speeding by non-party, Westchester Police Officer Russell Newton. (Crista Noel deposition (I) dated 11/21/14, Ex. A, at pp. 87-88, 94).

2. Ofc Newton pulled Pam Tolbert over at 2:25 p.m. Ex. C, p. 33, line 14.

3. Pamela Tolbert does not dispute that she was speeding, and has paid the ticket. (Pamela Tolbert deposition, Ex. B, at pp. 248-249).

4. Plaintiff Crista Noel was a friend of Pamela Tolbert's, and was following behind her in a separate vehicle. (Ex. A at pp. 79, 87).

5. A few minutes after Tolbert was pulled over by Ofc. Newton, plaintiff pulled her vehicle in front of Tolbert's stopped vehicle and stopped it along the curb, facing eastbound on 22nd St. / Cermak. (Ex. A at pp. 89-90; E x C. (Criminal Trial Transcript), p. 30, lines 6-10; p.

39, lines 19-23; p. 40, lines 8-14; p. 71, lines 3-11).

6.  When plaintiff pulled over in front of Tolbert on 22nd St./Cermak, she was stopped near a "No Parking" sign. (Ex. A at pp. 90, 93).

7.  Plaintiff called Tolbert on her cell phone after Tolbert was pulled over, and the two communicated by cell phone during the Tolbert traffic stop. (Ex. B at p. 39).

8.  As he was writing Tolbert a ticket while seated inside his squad car, Ofc. Newton observed the plaintiff pull her vehicle in front of Tolbert's. (Criminal trial transcript, Ex. C, at p. 30, lines 6-10). Ofc. Newton was concerned by plaintiff's vehicle, because he did not know why she had stopped, too. (Ex. C at p. 30).

9.  Ofc. Newton had previously called the traffic stop into the dispatch system, and Defendant Bruno Coltri responded to the traffic stop as the backup unit. (Ex. C at p. 10, 30). Ex. C, p. 30, lines 11-18.

10.  Newton and Ofc Coltri were in full police uniform, including vests, weapons (guns and Taser), and radios and in marked squad cars. Ex. C, p. 10, lines 5-13.

11.  Plaintiff testified that in order to calm Tolbert down she told Tolbert on the cell phone she knew that "suburban officers do that i.e., call a backup unit for a traffic stop Ex C, p. 71, line 19-23.

12.  When Ofc. Coltri arrived on the scene, he observed a vehicle which had been pulled over, and another vehicle stopped in front of it. (Ex. C at p. 10, lines 19-22). Ofc. Coltri first spoke with Ofc. Newton, and then pulled his squad car next to plaintiff's vehicle to speak with her. (Ex. C at p. 10, lines 14-24; p. 11, lines 9-15, Ex. A at p. 97).

13.  Ofc. Coltri said to plaintiff, "May I help you?" (Ex. A at p. 98). Plaintiff responded, "No. May I help you?" (Ex. A at p. 98). Coltri then responded again, "May I help you?" (Ex. A

2

at p. 98). Plaintiff repeated, "No. May I help you?" (Ex. A at p. 98).

14. Ofc. Coltri asked the plaintiff, "Do you see that No Parking sign?" Plaintiff agreed that she saw it but denied that she was "parked." (Ex. A at p. 99).

15. Plaintiff said she was not parked, she was "standing."(Ex. A at p. 99-100).

16. Ofc. Coltri told the plaintiff, "Pull your car around the corner or I'm going to give you a ticket." (Ex. A at p. 100).

17. Cermak Rd. is a wide, four lane, fast moving street, and that there is no parking on either side of the street. (Ex. C at pp. 12-13).

18. Noel pulled her car into the parking lot in response to Ofc. Coltri telling her, "Pull your car around the corner or I'm going to give you a ticket." Ex. A at pp. 100:15-101:1.

19. In response to Coltri stating, "Pull your car around the corner of I'm going to give you a ticket," Plaintiff pulled forward and turned right onto to Belleview St. She then pulled into and stopped her vehicle in the commercial mall strip parking lot on the corner. (Ex. C at p. 13-14; p. 75, lines 13-15; Ex. A at 103-105; Ex. D, Exhibit 8 from Noel Dep.).

20. Ofc. Coltri observed Noel pull 30 feet into the lot and into an open parking spot. Ex. C, p. 14, lines 1-4.

21. Pamela Tolbert testified that the overhead photograph she was shown depicts the intersection of 22nd St. / Cermak at its intersection with Belleview, and likewise shows the parking lot into which plaintiff drove her vehicle. (Ex. B at pp. 53-54, Ex. E, overhead photograph of the intersection at issue (Tolbert, Dep. Exh. 1)).

22. Crista Noel testified that the attached street level photograph depicts the area where plaintiff and Tolbert were stopped. (Ex. A at p. 92; Ex. F, street level photograph of the 22nd St. / Cermak (Noel Dep. Exh. 7)).

3

23. After plaintiff parked her vehicle into a parking space in the parking lot located on Cermak Rd., Ofc. Coltri pulled his vehicle into the entranceway of the parking lot. (Ex. C at p. 14).

24. Ofc. Coltri looked up the plaintiff's license plate on his in-car computer, so that he could determine who owned the car and who he was speaking with. (Ex. C at p. 14, lines 12-15).

25. Coltri testified that when he looked up from his computer, he heard screaming, and observed Noel out of her car and coming at him. He could hear her "yelling some things at [him]." (Ex. C at p. 14)

26. Before approaching Coltri's squad car on foot, the plaintiff from her car hollered at him, "Are you writing me a ticket?" (Ex. A at p. 116-117; Ex. C at pp. 14, lines 23-24; p. 78, lines 16-17 )

27. According to plaintiff, Ofc. Coltri did not respond to this question. Plaintiff believed that Ofc. Coltri did not hear her, because she was still at her car. (Ex. A at pp. 118-119; Ex. C, p. 76, lines 1-24, p. 78, lines 1-9, 18-19).

28. Plaintiff then approached the squad car, and she repeated herself and again asked, "Are you writing me a parking ticket? (Ex. A at p. 119; Ex. C, p. 79, lines 3-4).

29. Ofc. Coltri was inside of his car with the door closed, and plaintiff continued to walk closer toward the squad car. (Ex. A at p. 121).

30. Plaintiff testified that Ofc. Coltri's only response to her was to scream, "What?" (Ex. A at p. 119; Ex. C, p. 79, line 14).

31. Plaintiff, "told [Ofc. Coltri] I wanted to know why his behavior was like that and I asked him why he was being so disrespectful." (Ex. A at p. 120).

32. Ofc. Coltri observed the plaintiff approach him with her arms extended, and saw

she had something in her hand and did not know what it was. (Ex. C at p. 15, lines 4-8; p. 44, lines 12-13, 19-21).

33. Plaintiff approached to the point where she was at the rear passenger side door of the squad car. (Ex. A at p. 121). According to plaintiff she, "was still asking him why he was being so disrespectful, because he hadn't answered me." (Ex. A at p. 121).

34. As plaintiff approached the squad car, Ofc. Coltri exited the vehicle and moved to the rear quarter panel of the car on the driver's side. (Ex. C at p. 15, lines 13-14).

35. The squad car was between Ofc. Coltri and plaintiff, because Ofc. Coltri was on the driver's side and plaintiff was standing on the passenger side. (Ex. A at p. 124).

36. Ofc. Coltri testified at the criminal trial that "the [plaintiff] was not running, but rather walking very quickly towards me[.]" (Ex. C at p. 15). Ofc. Coltri testified that, when the plaintiff chest bumped him, he attempted to arrest her for battery to a police officer. (Ex. C at p. 15). Ofc. Coltri testified that he told plaintiff that she was under arrest, and attempted to take her into custody. (Ex. C at p. 15). Ofc. Coltri testified that, as he tried to grasp her hands to place handcuffs on her, she resisted and pulled away. (Ex. C at p. 16). He testified that plaintiff also struck him with open-hand slaps, closed-hand slaps or punches, and kicked him in lower legs, shins, and knees. (Ex. C at p. 16). This testimony was presented to the factfinder during plaintiff's criminal trial, which resulted in her conviction of resisting arrest. (Ex. C at pp. 15-16) After a bench trial, the Judge Thomas M. Tucker found plaintiff guilty of resisting a peace officer. (Ex. C, at p. 102).

37. Plaintiff testified that she saw Ofc. Coltri raise a fist toward her as he exited the squad car. (Ex. A at p. 123). Plaintiff did not testify that she was struck by Ofc. Coltri. (Ex. A at p. 126). Plaintiff did not go to the ground during the altercation. (Ex. A at p. 131-132).

5

38. While Ofc. Coltri was attempting to take her into custody, plaintiff claims she told him that she was "not resisting arrest." (Ex. A at p. 135).

39. The incident concluded when Ofc. Coltri had plaintiff face down on the hood of the squad car. (Ex. C at p. 17). While Noel was on the hood, Ofc. Newton approached them. (Ex. C at p. 17).

40. As Ofc. Newton approached, it appeared to him that Ofc. Coltri was attempting to arrest plaintiff and that Coltri had his handcuffs out. (Ex. C at p. 32, lines 14-18).

41. Plaintiff observed a taser in Ofc. Newton's hand. (Ex. A at p. 140).

42. After Ofc. Newton ran up to Noel, she allowed Ofc. Coltri to handcuff her. (Ex. C at p. 32-33).

43. The incident lasted approximately one minute. (Ex. C at p. 16, lines 20).

44. Tolbert took a cell phone picture of the incident on January 1, 2009. (Ex., C, p. 51, lines 2-7).

45. The picture shows Noel's feet are flat to the ground and she is laying on the hood of Ofc Coltri's squad car. Plaintiff's Ex. 4.

46. A photograph of Tolbert's cell phone shows that a telephone call was connected between plaintiff and Tolbert for two minutes and fifty-four seconds on the date at issue. (Ex. B at 162; Ex. G, photograph of Tolbert's cell phone). Plaintiff and Tolbert had a connected cell phone call which began shortly after Ofc. Newton stopped Tolbert, and which ended when the call disconnected during the plaintiff's arrest. (Ex. A at p. 142-143; Ex. B at p. 39).

47. Following Noel's arrest, Westchester EMT Matthew Martin arrived at the Westchester police station to treat Ms. Noel's injuries. Ex. C, p. 57, lines 6-14.

48. According to Martin, Noel's injuries included left shoulder pain, abrasion to the left

6

temple, abrasions to right and left hand. Ex. P. 59, lines 1-11.

49. Five days after the altercation, on or about January 5, 2009, the plaintiff visited her primary care doctor. (Ex. K, Deposition of Dr. Greider at p. 15). Dr. Greider observed only the following: "abrasion left temple and upper lid ecchymosis [i.e., bruising]. Hematoma left thigh and present bruising resolving." (Ex. K at p. 15). During that visit, plaintiff did not make any complaints of neck pain, back pain or shoulder pain. (Ex. K at p. 15). Dr. Greider recommended Motrin, an over-the-counter pain medication. (Ex. K at p. 19-20).

50. Ofc. Coltri signed a criminal complaint under oath alleging that Noel committed the felony charge of aggravated battery. Plaintiff's Exhibit 5, signed criminal complaint.

51. As a result of the altercation at issue, plaintiff was charged with aggravated battery to a police officer, a felony, and resisting a peace officer, a misdemeanor. (Ex. I, Complaint – Aggravated Battery; Ex. J, Complaint – Resisting a Peace Officer).

52. Noel never received a parking ticket.

53. Under Illinois law, the offense of resisting a peace officer is defined as, "A person who knowingly resists or obstructs the performance by one known to the person to be a peace officer, firefighter, or correctional institution employee of any authorized act within his or her official capacity commits a Class A misdemeanor." 720 ILCS 5/31-1.

54. Under Illinois law, the offense of aggravated battery to a police officer is defined as, "In committing a battery, a person commits aggravated battery if he or she…[k]nows the individual harmed to be an officer or employee of the State of Illinois, a unit of local government, or school district engaged in the performance of his or her authorized duties as such officer or employee[.]" 720 ILCS 5/12-4(b)(18)[1]

---

[1] The offense of aggravated battery to a police officer has since been recodified under 720 ILCS 5/12-3.05. The parties' Statement of Facts includes the language of the offense as of 2009, when plaintiff was arrested and tried.

55. Judge Thomas Tucker held a bench trial on April 30, 2010. (Ex. C at pp. 1-4). Plaintiff was represented by attorney Michael Rosenblat. (Ex. C at p. 1-2). Her attorney cross-examined the two prosecution witnesses, Ofc. Coltri and Ofc. Newton. (Ex. C at pp. 9, 18, 29, 33). Her criminal defense counsel called as defense witnesses Pamela Tolbert, and Matthew Martin, a firefighter paramedic who testified that he treated her for complaints of shoulder pain and minor abrasions. He also called Westchester Police Sgt. LaManna as a defense witness, and former co-worker Maurice Allen as a character witness. The plaintiff testified in her own defense. (Ex. C at pp. 36, 56, 59, 60, 64, 67).

56. Following the trial, plaintiff was acquitted of aggravated battery, but was found guilty of resisting arrest. (Ex. C at p. 102, lines 6-16).

57. Plaintiff appealed her conviction and contended that the arresting officer's testimony was not credible, was not consistent, was impeached, and therefore was not sufficient to support the guilty verdict for resisting a peace officer. (Ex. H, Opinion of the First District Court of Appeals at pp. 1-2). The Court of Appeals affirmed plaintiff's conviction of resisting a peace officer. (Ex. H at p. 2).

58. All incidents at issue took place in Cook County, Illinois, which is within the Northern District of Illinois. [The court may take judicial notice of the fact that the intersection of Cermak and Belleview, Westchester, Il is located in Cook County and the Northern District of Illinois, Eastern Division.]

Respectfully submitted,

**OFFICER BRUNO COLTRI,**

By: /s/ John A. Masters
One of his attorneys

Thomas R. Weiler (ARDC # 06184955)
John A. Masters (ARDC # 6299434)
**Langhenry, Gillen, Lundquist & Johnson, LLC**
Attorneys for Defendant, Officer Bruno Coltri
33 North Dearborn Street - Suite 1600
Chicago, IL 60602
(312) 704-6700

## CERTIFICATE OF SERVICE

Please take notice that the undersigned, an attorney, hereby certifies that he caused the attached **Joint Statement of Material Facts** to be served upon counsel of record in the above captioned matter at the addresses listed on this certificate of service by using the CM/ECF system on this **18th** day of **April, 2017.**

**Counsel for plaintiff**
Brendan Shiller
Shiller*Preyar Law Offices
601 S. California Ave.
Chicago, IL 60612
(312) 226-4590

By: /s/ John A. Masters
John A. Masters

Thomas R. Weiler (Attorney No. 06184955)
John A. Masters (Attorney No. 6299434)
Maryam H. Arfeen (Atty No. 6316640)
**Langhenry, Gillen, Lundquist & Johnson, LLC**
Attorneys for the defendant, Bruno Coltri
33 North Dearborn Street - Suite 1600
Chicago, IL 60602
Tel: (312) 704-6700