IN THE UNITED STATES DISCTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

| | |   | |
|---|---|---|---|
| CRISTA E. NOEL, | ) | | |
|     Plaintiff, | ) | | |
| v. | ) | 10-cv-08188 | |
| BRUNO COLTRI, et. al. | ) | Judge Sara L. Ellis, presiding | |
|     Defendants | ) | | |

**PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANT'S SUMMARY JUDGMENT MOTION**

NOW COMES Plaintiff, CRISTA E. NOEL, by and through her attorney BRENDAN SHILLER, of the Shiller Preyar Law Offices, with the instant memorandum of law in opposition to Defendant's Summary Judgment motion, and in support state as follows:

## I. Introduction

Genuine disputes of fact abound as to Defendant Coltri's use of force against Noel and as to the malicious prosecution of Noel for the felony aggravated battery charge (and for which the criminal judge expressly found Noel was more credible than Coltri). Despite these clear and genuine disputes of fact, Defendants try to shoehorn *Heck v. Humphrey* onto a set of facts where it does not belong. Defendants' motion must be denied as to Noel's excessive force claim and malicious prosecution claim.

## II. Additional Relevant Disputed Facts With Support in The Record

Noel pulled over near a no parking sign in order to engage in a cell phone conversation with her friend Pam Tolbert, who had been pulled over for speeding. PSAF, par. 1. Noel's car was still running when she pulled over, as she waited for Tolbert to be finished with the traffic stop. PSAF, par. 2. While Noel was pulled over, Defendant Coltri pulled up, and Tolbert screamed out of fear and confusion. Noel assured her that there was nothing to fear because calling for backup officer was a normal routine in the suburbs. PSAF, par. 3

1

When Coltri pulled up, he motioned to speak to Noel, who responded by smiling, rolling down her window and saying "may I help you?". PSAF, par.4. Coltri responded by screaming at Noel, "why are you sitting here?" PSAF, par. 5. Noel and Coltri then debated whether that meant that Noel was legally "parked" or just "standing". PSAF, par. 6 The debate ended when Coltri ordered Noel to "pull your car around the corner or I'm going to give you a ticket." PSAF, par. 7.

Noel pulled into a strip mall parking lot and into a parking spot, to wait while her friend's traffic stop concluded. PSAF, par. 8. Coltri then blocked Noel in with his car. PSAF, par. 9. At that point, Noel got out of her car, stood next to her car, and asked Coltri in a raised voice if she was getting a ticket. PSAF, par. 10. When Coltri did not respond, Noel came to believe that Coltri could not hear her, so she walked closer to Coltri. PSAF, par. 11. When she got halfway between her car and Coltri's car, she repeated her question and again did not get an answer. PSAF, par. 12

Eventually, as Noel got closer to Coltri, he screamed "What?" PSAF, par. 13. At that point, Noel asked Coltri why he was being so disrespectful. PSAF, par. 14. Eventually, Coltri exited his car, said "that's it" and attacked Noel. PSAF, par. 15. Coltri's arm came around Noel's face, smashed her glasses into her face, forced her hat and earmuffs and scarf off of her, and then Coltri further attacked Noel. PSAF, par. 16. Coltri then pushed Noel onto the squad car, and all Noel remembers is her nose hitting the window. PSAF, par. 17.

At this point, after Coltri's initial use of force, Coltri tried to push Noel to the ground and she fought against going to the ground, in part by leaning back. PSAF, par. 19. Eventually, Noel was placed on the hood of the car, with Coltri holding her hands behind her back, and she just laid there. PSAF, par. 20. After Coltri had Noel in custody and there was no resisting by Noel, Coltri unnecessarily twisted Noel's arm. PSAF, par. 21. Noel never battered Coltri. PSAF, par. 22

Noel was held in custody overnight so that a bond hearing could be had on her felony charge of aggravated battery, where a bond of $5,000 was eventually set. PSAF, par. 23. After the encounter

with Coltri, Noel had bruises on her face, redness on her temple, a bruise on her leg. PSAF, par. 24. Noel first visited Suzanne Grieder on January 5, 2009, where she presented with an abrasion on her left temple, upper eyelid ecchymosis, and a bruise on her left thigh that occurred as a result of being assaulted by Coltri. PSAF, par. 25. When Noel first met with Dr. Janet Robinson, Noel told Robinson that Coltri attacked her in an unwarranted way, and that it changed her life in a lot of really bad ways. PSAF, par. 26. Dr. Robinson is providing weekly therapy sessions to Noel, because Noel has been struggling psychologically because of Coltri's assault. PSAF, par. 27. Dr. Robinson believes that Noel's life was irrevocably altered by this incident with Coltri. PSAF, par. 28. Noel continued to limp and complain of pain to her leg for a year after the incident. PSAF, par. 29

At the criminal trial, the State argued that Noel resisted arrest when she debated with Coltri over whether or not Noel was illegally parked ("[Noel] went back and forth with [Coltri] after he told her, in full police uniform, in a squad, to pull over. She is resisting the officer at this point."). PSAF, par. 30. At the criminal trial, the judge initially addressed the more serious felony charge of aggravated battery, and ruled, "I had an opportunity to review the evidence, judge the credibility and reliability of the witnesses who have testified. And after doing so, find there is not sufficient evidence beyond a reasonable doubt for the aggravated battery to the police officer." PSAF, par. 31. The criminal trial judge made no findings as to the basis of the resisting arrest. His ruling as to the resisting arrest was "However, there is sufficient evidence of the misdemeanor charge, resisting a police officer. So there will be a finding of guilty as to the resisting of the police officer." PSAF, par. 32.

### III. Analysis

#### a. Standard of Review

Summary judgment is appropriate only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). A genuine dispute of material fact exists if "the evidence is such that a reasonable jury could return

3

a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The Defendants have the burden of establishing that there is no genuine dispute as to any material fact. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986). The Court "is not to evaluate the weight of the evidence, to judge the credibility of witnesses, or to determine the truth of the matter, but instead to determine whether there is a genuine issue of triable fact." *Nat'l Athletic Sportswear, Inc. v. Westfield Ins. Co.,* 528 F.3d 508, 512 (7th Cir. 2008). The Court considers the facts in a light most favorable to Ms. Noel. *Zuppardi v. Wal-Mart Stores, Inc.*, 770 F.3d 644, 649 (7th Cir. 2014).

Summary judgment is often inappropriate in excessive-force cases because the evidence surrounding the officer's use of force is often susceptible of different interpretations." *Catlin v. City of Wheaton*, 574 F.3d 361, 367 (7th Cir.2009). Because the excessive force "reasonableness inquiry 'nearly always requires a jury to sift through disputed factual contentions, and to draw inferences therefrom[,] ... summary judgment ... in excessive force cases should be granted sparingly.'" *Davis v. Peoria Cty.*, 2009 WL 3258318, at *7 (C.D. Ill. Oct. 8, 2009).

    b. *Heck* does not bar Noel's claim for excessive force used prior to and after her arrest

Although Defendants make a fleeting reference to reasonableness and the *Graham* factors[1], their entire argument for summary judgment on Noel's excessive force claim is based on *Heck v. Humphrey*, 512 U.S. 477, (1994). Defendants argument fails. *Heck* does not bar Plaintiff's claim for excessive force because Plaintiff's success on that claim would not necessarily invalidate Noel's conviction for resisting arrest.

Noel was convicted of misdemeanor resisting or obstructing a police officer pursuant to 725 ILCS 5/31-1(a). Specifically, that law makes it a misdemeanor crime for "[a] person who knowingly

---

[1] See R. 198, p. 5, citing Graham v. Conner, 490 U.S. 386, 396-97 (1989).

resists or obstructs the performance by one known to the person to be a peace officer, firefighter, or correctional institution employee of any authorized act within his or her official capacity..."

It is axiomatic that in order for there to be a *Heck* bar against the civil Plaintiff's claim a judgment in Noel's favor must "***necessarily*** imply the invalidity of [her] conviction" for resisting or obstructing a police officer. *Parish v. City of Elkhart,* 614 F3.d 677, 680 (7th Cir. 2010), *citing Heck,* 512 U.S. at 486-487 [emphasis added]. The Court's reasoning in *Heck* is to protect against civil court suits "that directly attacks the validity of a conviction..." *Parish*, 614 F.3d at 681. Consequently, the Supreme Court has consistently stressed the importance of the term "necessarily" in addressing potential *Heck* bars. *See e.g Nelson v. Campbell*, 512 U.S. 637, 647 (2004) (collecting cases).

Therefore, some constitutional violations, such as excessive force, are generally not barred by *Heck*, because such a claim can be "entirely consistent with a conviction." *Evans v. Poskon*, 603 F.3d 362, 364 (7th Cir. 2010), *citing Gilbert v. Cook*, 512 F.3d 899 (7th Cir.2008); *VanGilder v. Baker*, 435 F.3d 689, 692 (7th Cir.2006); *and Dyer v. Lee*, 488 F.3d 876, 881 (11th Cir.2007). Further, although "Heck prevents such a person from prevailing in the § 1983 action on a position incompatible with the conviction, the plaintiff need not adopt the defendants' view of what occurred in order to contest the degree of force used." *Evans*, 603 F.3d at 364. Importantly, even in the context of a resisting arrest conviction, a plaintiff claiming excessive force is "entitled to an opportunity to prove that the defendants used unreasonable force during and after his arrest." *Id.*

As the Defendants themselves note, if Noel claims that the unreasonable force occurred either before or after her arrest, then her claim is not barred by *Heck*. See R. 198, p. 7 ("...courts have rejected summary judgment on *Heck* grounds...when a plaintiff can point to facts in the record to show that excessive force was used either before or after the subject arrest."), citing *Parks v. Chicago*, 2011 U.S. Dist. LEXIS 103832, at *7-8 (N.D. Ill. 2011) (Feinerman, J.) (because Plaintiff alleged the excessive force occurred either before or after the arrest, *Heck* did not bar claim despite

5

plea to resisting and aggravated assault of an officer); *see also Rollins v. Willett*, 770 F.3d 575, 576 (2014) (upholding district court's denial of summary judgment based on Heck—ruling that a claim that an initial seizure was unconstitutional would not necessarily impugn the Plaintiff's subsequent conviction for driving on a suspended license).

Notably, at Noel's criminal trial, the judge made no specific finding as to what act constituted resisting arrest (See Ex. 3, p. 102, lines 12-15), but the assistant state attorney expressly argued that Noel resisted when she initially argued with Coltri (See Ex. 3, p. 100, lines 1-6) ("...what did she tell you when she was cross-examined?...She went back and forth with him after he told her, in full police uniform, in a squad to pull over. She is resisting the officer at this point.")

It is also notable, that in context, the trial judge made a specific reference to credibility findings when he found Noel not-guilty of aggravated battery, but did not make the same reference when he found her guilty of resisting. This is even more contextual clue that he found Noel credible in her testimony and Coltri not credible when he testified that Noel attacked him and chest bumped him. The state argued that the trial judge could take Noel's testimony at her own word as it was still legally resisting arrest, and that appears to be exactly what the criminal trial judge did. Further, it is clear from context that if the judge disbelieved Coltri's testimony regarding the aggravated battery, then any finding of guilty on the resisting/obstructing charge would likely not have been as a result of the actual physical altercation, but instead of Coltri and Noel's initial argument.

But, this Court need not go that far. The only question at this stage is whether Noel's excessive force claim (that after she initially resisted or obstructed Coltri he used unreasonable force against her) would *necessarily* invalidate her state court conviction for resisting or obstructing. Taking the facts in the light most favorable to Noel, it is clear that her claim would not invalidate her conviction for resisting or obstruction. There are multiple bases for which the court could have found

6

Noel guilty of resisting or obstructing, and at least one of them would not be invalidated by Noel's claims of excessive force.

In *Evans, supra,* the § 1983 plaintiff alleged that he "was beaten mercilessly [by the defendant police officers] both before and after the officers gained custody of him." 603 F.3d. at 363. The Seventh Circuit held that *Heck* did not bar plaintiff convicted of resisting arrest from proceeding on excessive force theories "that the police used excessive force to effect custody" and "that the police beat him severely even after reducing him to custody," for those theories would be "entirely consistent" with the conviction. *See also Hardrick v. City of Bolingbrook,* 522 F.3d 758, 764 (7th Cir. 2008) ("The fact that Hardrick 'struggled while being handcuffed' at one point in time does not preclude the possibility that at another point in time, Hardrick was 'peaceably waiting to be handcuffed.' Whether a fact-finder would find this scenario plausible is not for us to conclude, but in terms of *Heck*, it is not one that "necessarily" implies the invalidity of the conviction,' and does not bar Hardrick's excessive force claim."); *Gilbert,* 512 F.3d at 902 ("Heck ... do[es] not affect litigation about what happens after the crime is completed.").

Here, Plaintiff is not disputing the apparent basis for her resisting/obstructing conviction—her arguing with Coltri and her refusal to obey his initial command that she pull off and pull into the strip mall. Her claims that Coltri used excessive force a few minutes after that initial encounter does not invalidate Noel's conviction for obstructing based on their initial encounter. Coltri exited his car, said "that's it" and attacked Noel; his arm came around Noel's face, smashed her glasses into her face, forced her hat and earmuffs and scarf off of her, and then he further attacked her. Coltri then pushed Noel onto the squad car, and all she remembers is her nose hitting the window. PSAF, pars. 15-17. Noel's claim that Coltri's use of force against her after her initial resisting does not necessarily invalidate her conviction for resisting arrest and *Heck* does not bar her excessive force claim.

7

### c. There are genuine dispute as to whether Noel was seized in the parking lot

Plaintiff admittedly is attempting to toe a very fine line here with the following contention; although Plaintiff believes that her criminal conviction rests upon her initial refusal to immediately obey Officer Coltri's commands to pull off and pull over into the strip mall (as the State argued during her criminal trial), by giving her the option to leave "or" get a ticket, Coltri was signaling that Noel was free to leave. At that point, Noel pulled over into the strip mall to continue to observe the traffic stop of her friend. When Coltri then blocked her in, he was seizing her.

Notably, the Defendants do not argue that this seizure was reasonable and for the purpose of arresting her was based on the initial obstructing—but instead argue that Noel was never seized. At this stage, however, whether Noel was free to leave is a genuine dispute of fact. Both Noel and Tolbert testified that Noel was blocked in by Coltri. That is sufficient to create a genuine dispute of fact as to whether Noel was seized.

If, however, this court, believes that this argument implicates *Heck*, then Noel withdraws it.

### d. Heck does bar Noel's false arrest claim

As plaintiff's counsel noted in open court, on March 28, 2017, *Heck* does bar Noel's false arrest claim because she was convicted of resisting/obstructing. Prior to filing their motion, defense counsel contacted the undersigned and asked if it would be necessary to brief false arrest, given the undersigned's statements in open court. Plaintiff's counsel informed Defense counsel it was unnecessary to brief the false arrest. Consequently, this court should enter an order granting defendant's (unbriefed) motion for summary judgment on false arrest.[2]

---

[2] Plaintiff's counsel is cognizant of the fact that a week prior to the March 28 status, the Supreme Court overruled Seventh Circuit standing as to pre-trial detention claims under the fourth amendment, possibly opening the door to a *Manuel* claim here based on the false aggravated battery charge. However, almost all of Noel's time in custody was spent pre-bond hearing, and she was bonded out a few hours after the hearing. And given the overlapping nature of and viability of Illinois malicious prosecution in this particular case, Plaintiff will not brief that issue here.

e. **There are genuine disputes of material fact as to whether Noel was maliciously prosecuted for aggravated battery**

Noel's malicious prosecution claim for the prosecution of her for charge of aggravated battery to a police officer must stand at this stage as there are disputes of fact for every element. The elements of malicious prosecution in Illinois are (1) commencement or continuing of criminal proceedings by the defendants; (2) termination of that matter in favor of the plaintiff; (3) the absence of probable cause for the proceedings; (4) the presence of malice; and (5) resulting damages. *Gonzalez v. City of Elgin*, 578 F.3d 526, 541 (7th Cir. 2009), citing *Swick v. Liautaud*, 662 N.E.2d 1238, 1242 (Ill. 1996). Defendants appear to make two arguments: first, that viewing all the evidence in a light favorable to Noel it is undisputed that there was probable cause to charge her with aggravated battery to a police officer, and second, viewing all the evidence in a light favorable to Noel it is undisputed that there was no malice. Both of these arguments fail.

i. *There is a genuine dispute as to probable cause for aggravated battery*

First, for Illinois malicious prosecution claims, there must be probable cause for each of the specific charges instituted; consequently, Noel's conviction for resisting/obstructing is of no import. In *Holmes v. Vill. Of Hoffman Estates*, 511 F.3d 673, 682 (7th Cir. 2007), the Seventh Circuit stated that:

> [A] malicious prosecution claim is treated differently from one for false arrest: whereas probable cause to believe that a person has committed *any* crime will preclude a false arrest claim, even if the person was arrested on additional or different charges for which there was no probable cause, probable cause as to one charge will not bar a malicious prosecution claim based on a second, distinct charge as to which probable cause was lacking. *Holmes* at 682 (internal citations omitted).

Indeed, cases that state that probable cause is an absolute bar to false arrest and malicious prosecution claims "are incomplete" because they fail to take into account the holding of *Holmes*. *Akbar v. City of Chicago*, No. 06 C 3685, 2008WL 5272463, at *3 (N.D. Ill. Dec. 12, 2008). Thus,

9

the *Holmes* court stated that "although there was probable cause to support the charge that Holmes had committed a battery against [the fellow officer], we must separately consider whether there was probable cause to support the other charges for which Holmes was prosecuted." *Id.* at 684. (emphasis added). In this case, Defendants needed probable cause for the specific charge of aggravated battery to Coltri in order to commence and continue the felony aggravated battery proceedings against Noel.

Defendants' contention that Noel is somehow prohibited from disputing whether there was probable cause to institute the facts that underlie the charge for aggravated battery when she was not convicted of aggravated battery (See R. 198, p. 11)[3] simply miscomprehends *Heck*[4] and its progeny, and it ignores *Holmes* and its progeny. There is nothing about the guilty finding for resisting/obstructing that is impugned by Noel contesting probable cause for the aggravated battery, and as *Holmes* teaches, each criminal charge needs separate probable cause.

Second, whether there was probable cause for aggravated battery is entirely a credibility determination at this point. Based on the testimony of Noel and Tolbert (and the apparent validation from the ruling of the criminal trial court), there simply was no probable cause to arrest and charge Noel for aggravated battery because she did not batter Coltri. This court cannot make any credibility determinations, *Nat'l Athletic Sportswear, Inc., supra,* 528 F.3d at 512, and it must consider the facts in a light most favorable to Ms. Noel. *Zuppardi, supra,* 770 F.3d at 649. Therefore, there is sufficient evidence in the record of a lack of probable cause for the aggravated battery to a police officer charge.

---

[3] Defendants also seem to miscomprehend that just because it is undisputed that Coltri testified in a certain matter, does not make the substance of what Coltri testified to as also undisputed. See R. 198, p. 11, last paragraph referencing SOF, paragraph 36, and misstating what is undisputed.

[4] There is even a question of whether *Heck* applies to state law claims (see Serino v. Hensley, *2012 WL 6025751, at *5, n. 2 (S.D. Ind. 2012)), but given that Heck does not apply at all, Plaintiff* does not bother to make that argument.

### ii. *There are genuine disputes of fact as to malice*

Defendants make a perfunctory argument that there is nothing in the record to support the element of malice. In Illinois, malice is defined as "the initiation of a prosecution for any reason other than to bring a party to justice." *Rodgers v. Peoples Gas, Light & Coke Co.,* 315 Ill.App.3d 340, 248 Ill.Dec. 160, 733 N.E.2d 835, 842 (2000).

Malice can be inferred when the defendant lacks probable cause and the circumstances indicate a lack of good faith. *Holland v. City of Chicago*, 643 F.3d 248, 255 (7th Cir. 2011); *see also, Dakhlallah v. Zima*, 42 F. Supp. 3d 901, 921 (N.D. Ill. 2014) ("Although lack of probable cause does not alone establish malice, a trier of fact may infer malice from a lack of probable cause if there is no other credible evidence which refutes that inference.").

Here the evidence of malice is straightforward. If Noel is to be believed, as she must be at this stage, then Defendants maliciously prosecuted Noel for aggravated battery of a police officer to cover-up Coltri's unreasonable use of force. If the trier of fact believes Noel's claim of excessive force, and Noel's contention that she did not batter Coltri, then they will have a basis to find malice.

### f. The Equal Protection claim is viable

It was an abuse of the Defendants' discretion and therefore an equal protection violation to single out Noel for an aggravated battery prosecution premised on false testimoney. *See Geinosky v. City of Chicago, et al.* 675 F.3d 743 (7th Cir. 2012) ("A grant of discretion is a grant of trust. If officers betray that trust by deliberately targeting someone for harassment, that discrimination can violate our constitution.").

To state a class-of-one equal protection challenge, Noel must assert that she was "singled out," without regard for any group affiliation, for discriminatory treatment. *United States v. Moore*, 543 F.3d 891, 896 (7th Cir. 2008). In order to make out a *prima facie* case, Noel must present "evidence that the defendant deliberately sought to deprive [her] of the equal protection of the laws

11

for reasons of a personal nature unrelated to the duties of the defendant's position." *Del Marcelle v. Brown Cnty. Corp.*, 680 F.3d 887 (7th Cir. 2012) *cert. denied*, 133 S. Ct. 654 (U.S. 2012).

Contrary to Defendants' arguments, this district has repeatedly recognized that if animus is readily obvious, it would be redundant to "require that the plaintiff show disparate treatment in a near exact, one-to-one comparison to another individual." *See Fenje v. Feld,* 398 F.3d 620, 628 (7th Cir.2005) ("[A]n 'orchestrated campaign of official harassment directed against [the plaintiff] out of sheer malice,' 'vindictiveness,' or 'malignant animosity' would state a claim for relief under the Equal Protection Clause.") (quoting *Esmail v. Macrane,* 53 F.3d 176, 178–79 (7th Cir.1995)); *see also Nevel v. Vill. of Schaumburg,* 297 F.3d 673, 681 (7th Cir.2002); *Swanson v. City of Chetek*, 719 F.3d 780, 784-85 (7th Cir. 2013). Thus, Noel need not identify a similarly situated individual; a comparator would be meaningless in light of the substantial evidence that Coltri targeted Noel for prosecution because he was upset with her unwillingness to listen to him.

When the harassment consists of excessive force followed by false police reports, perjured testimony, and malicious prosecution to hide the initial unconstitutional activity, then that constitutes sufficient singling out to be an equal protection violation. *Ivy v. Powers*, No. 08 C 3826, 2009 WL 230542, at *5–6 (N.D. Ill. Jan. 30, 2009). In *Ivy,* the court faced a similar factual scenario. *Ivy v. Powers*, No. 08 C 3826, 2009 WL 230542, at *5–6 (N.D. Ill. Jan. 30, 2009). There, just as here, the plaintiff based his claim on the Defendant Officers' decision to file false police reports and criminal complaints against her to cover-up for their alleged misconduct. The court reasoned that

> "This is different from the discretionary decision to arrest one individual among many (due to logistical reasons) as set forth in the *Engquist* analogy. "The paradigmatic 'class of one' case, more sensibly conceived, is one in which a public official, with no conceivable basis for his action other than spite or improper motive ..., comes down hard on a hapless private citizen."*Lauth,* 424 F.3d at 633. Here, Ivy alleges that he was a "hapless" private citizen who was the victim of the Defendant Officers misconduct and that this misconduct was spurred by an improper motive, that is, covering up their alleged violations of Ivy's Fourth Amendment rights. Ivy's

12

claim against the Defendant Officers is not based on their discretionary decision-making duties as police officers, and is therefore unlike the plaintiff's class of one claim in *Engquist.Id.*

*See also Craft v. Flagg,* 2008 WL 1883337 at *3 (N.D.Ill.2008) (holding plaintiff sufficiently pled equal protection "class of one" claim where he alleged that officers treated him differently than others by planting evidence on him). If Coltri singled out Noel to cover up his use of excessive force, then that is sufficient for an equal protection of one claim at this stage.

### g. Due Process and 1st Amendment Claims

Plaintiff concedes that her Due Process and First Amendment claims are not viable at this stage.

### h. Conclusion

For the foregoing reasons, this Court should deny Defendant's motion as to Noel's excessive force, malicious prosecution and equal protection claims.

s/Brendan Shiller
Ardc no. 6279789

Shiller Preyar Law
@ The West Side Justice Center
601 S. California
Chicago, IL 60612
312-226-4590

## CERTIFICATE OF SERVICE

The undersigned, hereby certifies that a copy of the foregoing was served upon all opposing counsel electronically, through the EM/ECF system.

/s/ Brendan Shiller