IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| CRISTA E. NOEL, <br><br>     Plaintiff, <br><br> vs. <br><br> BRUNO COLTRI, <br><br>     Defendant. | No. 10cv08188 <br> Honorable Judge **SARA L. ELLIS** |

### PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF HER
### MOTION FOR A NEW TRIAL

   NOW COMES Plaintiff, Crista E. Noel, by herself, pro se, and moves this Honorable Court to grant her motion for Relief from a Judgment or Order Rule 60(b)(d), Findings and Conclusions by the Court; Judgment on Partial Findings, Rule 52(a), or in the alternative, grant her motion for a new trial pursuant to Rule 59(a) of the Federal Rules of Civil Procedure.

### STANDARD OF REVIEW

   Under Rule 59(a) of the Federal Rules of Civil Procedure, "a new trial may be granted to all or any of the parties on all or some of the issues after a jury trial for any reason for which a new trial has been granted in an action at law in federal court." Fed.R. Civ. P. 59(a) (2009), The Court should grant a motion for a new trial when the clear weight of the evidence is against the jury verdict, the damages are excessive, or for some other reason the trial was not fair to the moving party. *Scaggs v. Consolidated Rail Corp.,* 6 F.3d 1290, 1293 (7th Cir. 1993). Conduct by the court, counsel or jury, which improperly influences the deliberative process, is grounds for a new trial. *Hillard v Hargraves* 197 F.R.D. 359 (N.D. Ill. 2000) (citing *McNabola v. Chicago Transit Authority*, 10 F.3d 501, 516 (7th Cir. 1993); *Emmel v Coca-Cola Bottling Co.,* 95 F.3d 627, 636 (7th Cir. 1996). A new trial also may be granted when the non-moving party failed to disclose material information prior to trial. *Brandt v Vulcan, Inc.,* 30 F.3d 752, 758 (7th Cir. 1994) The moving paty must establish that misconduct occurred and cause prejudice to [her]. *Wiedemann v Galiano*, 722 F.25 335 337 (7th Cir. 1983). The total impact of all errors or irregularities at trial determines whether a defendant is entitled to a new trial. United *States v. Williams*, 81 F3d 1434, 1443-44 (7th Cir. 1985) (citing United States v Boyd, 55 F.3d 239, 243 (7th Cir. 1995)).

   Under Rule 60(b)(d) of the Federal Rules of Civil Procedure, "the court may relieve a party or its legal representative from a final judgment, order, or proceeding for the following reasons: (1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence that, with reasonable diligence, could not have been discover in time to move for a new trial

under Rule 59(b); (3) fraud (whether previously called intrinsic or extrinsic, misrepresentation, or misconduct by the opposing party. Other Powers to Grant Relief, this rule does not limit a court's power to (1) entertain an independent action to relive a party from judgment, order, processing; (3) set aside a judgment for fraud on the court. Fed.R. Civ. P. 60(a)(b)(d) (2007)

Under Rule 52(a)(5) Questioning the Evidentiary Support. A party may later question the sufficiency of the evidence supporting the finding, whether or not the party requested findings, objected to them, moved to amend them, or moved for partial findings, Fed.R. Civ. P.52(a)(6) (2009)

## STATEMENT OF FACTS

Plaintiff, Crista Noel, pro se, filed claims against Bruno Coltri; and the Westchester Police Department in an amended complaint. Some of those complaints included, first, fourth and fourteenth amendment claims, as well as malicious prosecution, racial profiling, hate crimes, (gender-based violence), aggravated battery, false imprisonment and malicious prosecution. Her amended complaint included others not listed. During proceedings Plaintiff complained that Defense counsel committed slander, bullied her, tampered with evidence, violated HIPAA, and should have been found in contempt of court for receiving mental health records while under a court order of denial, along with other reasons. All of Plaintiff's complaints and motions were denied, but Judge Zagel did state that he would entertain a tort against Defense counsel after Plaintiff's trial was completed. During trial Defense counsel continued violating court orders and slandering Plaintiff.

Although Plaintiff won the right to argue malicious prosecution and equal protection of one, some claims were dismissed without her knowledge, or consent. She argued this fact in her motion to reconsider. Specifically, Plaintiff argued that she did not, nor would she have ever dismissed her first amendment claim because it was critical to her case. Additionally, she argued that Coltri illegally seized her and violated her constitutional rights before any of the events filed in his criminal complaint occurred. Plaintiff's motion to reconsider was denied. Plaintiff made an oral request for an interlocutory appeal in a status hearing but was advised against moving forward.

Previously, lawyers came to Plaintiff's rescue because she knew them through her work with Women's All Points Bulletin. Plaintiff appreciates every lawyer who worked on her case pro bono. On many occasions Plaintiff was beyond her level of competency, and completely drained by the psychological abuse heap upon her during the 10 years of proceedings.

Upon the assignment of her trial lawyer, Defense counsel took full advantage of Plaintiff's status as a client. Although discovery was closed and counsel had refused to give Plaintiff any of her requests, except the documents given to Dr Rhone by order of the court, they began to selectively, and surprisingly, produce documents, audio tape recordings, "experts" heretofore never seen, heard, or presented to Plaintiff for review during the entire 10 years of proceedings, and depositions; and Plaintiff was deposed twice. Over the objections of Plaintiff's lawyers, these documents and recordings were allowed and presented at trial.

During trial Defense counsel continued their psychological manipulation, slander, and violations of Court orders. Plaintiff's counsel and witnesses were rendered ineffective through all the actual and perceived limitations ordered by the Court. Confusion and frustration abound as trial began. Plaintiff or her witnesses were cut short, cut off, or not allowed to fully speak to the issues, or give their full testimony even though Plaintiff and Pamela Tolbert had previously testified during the criminal trial and the transcript was in the record.

As requested, Plaintiff asks that this motion protect her right to appeal.

## ARGUMENTS

### I. COLTRI PERJURED HIMSELF AND COMMITTED FRAUD UPON THIS COURT

Coltri committed fraud upon the court and he will continue to perjure himself as long as he is not held accountable. It began with his first call to dispatch. His first statement was riddled with factual inconsistencies, complete fabrications, and ambiguous and improbable statements as recorded by Sgt. LaManna; he continued with his testimony during preliminary hearing; he changed again during testimony at criminal trial; and told an outrageous in story during this civil trial.

It is clear that Coltri was either coached by his Defense team, and/or his years of employment have contributed to his fourth story. When he uses catch phrases like "split second decision" it attest to this fact. But Coltri has *never* been consistent in his stories. These are not simple contradictions as the Illinois Appellate court described; these are pure fabrications that change each time he testifies. In his fourth, and hopefully final story, suddenly, Plaintiff is angry about Pamela Tolbert receiving a ticket, something never mentioned in his 3 previous stories. Plaintiff argues it is an incontrovertible fact that his supervisor and Sergeant, unequivocally and unambiguously, testified that Coltri did not tell him, that he told Plaintiff she was under arrest. Likewise Coltri did not testify to telling Plaintiff she was under arrest at preliminary hearing, nor is it written in the original statement.

In this Court, Coltri and Newton testified that Plaintiff and her witness were sitting in their cars behind a building, but upon cross-examination, Coltri points directly at the "no parking sign" collaborating Plaintiff, and her witness' testimony that they were sitting in front of each other near the corner.

Coltri has the Plaintiff charging, walking, walking briskly, running, screaming and cussing about tickets that do not exist, and tickets given to friends; cussing about being "Black," and using her breasts as weapons. And on top of all that, he has her hitting; kicking; slapping; punching, with both, open hands, *and* closed fists, all while she is holding a phone in her hand which he manages never to get "clocked" with. Coltri testified to being one of approximately 30 officers who has been spit on and kicked in the face but was not hurt by anyone but Plaintiff.

He unbelievably testifies to having no problem with a "dangerous person" driving a 2000 pound car towards him to exit a lot while he's searching for a warrant for her arrest, but he feared

3

for his life when a 135lb woman walked towards him asking him a question, causing him to jump out of his vehicle and walk directly into the path of this "dangerous person with an unidentified object" that he, in 2019, believed was a gun. Not only flying in the face of his training, again, Coltri never mentions fearing for his life, split second decisions, or a gun in his previous statements or testimony. To the contrary, he states he was blocking Plaintiff in the lot if she wanted to move her vehicle, and he recognized she had a phone in her hand.

Defense's expert testified that Plaintiff has no mental health disorder/disability but Defense convinced the jury that someone with no mental health disorder/disability would act like someone with a severe mental health disorder/disability, only because they were allowed to obtain and use over 30 years of Plaintiff's health records.

Coltri through perjury convinced a jury that Plaintiff, who has spent 10 years, pro se, presenting verbal and written legal arguments in state and federal courts of law, did not argue the law while she was sitting by a stop sign. It is illogical and improbable that Plaintiff would be upset because another person was receiving a ticket or upset about a ticket that did not exist. Just as it is improbable and illogical for Plaintiff to have said to Coltri, "I don't have to go fucking nowhere, I'm sick of you people picking on us. He only stopped her because she is Black!" *Coltri's Original Statement* (Jan 2009) It is improbable and illogical because Plaintiff was already stopped when Coltri approached, she would not have said, "he only stopped her because she's Black." Additionally, if Plaintiff had said she wasn't going to move her car, she would not have moved her car.

Coltri's next statement is consistent with Plaintiff, he threatened to write her a ticket and "at this time" she moved her car around the corner into the parking lot. There is no discussion of Pamela Tolbert's ticket based on Coltri's original statement, made within minutes of the incident, nor is there any testimony discussing Pamela Tolbert's ticket at preliminary hearing which was more than 48 hours later, or in criminal trial which was approximately 2 years later. Coltri has never been consistent with his testimony in regard to what Plaintiff said during their conversations except that she said, "May I help you?"

Coltri states that he pulled his car onto the street, at the apron, and not onto the apron at the entrance/exit of the parking lot, as the photograph of the scene shows. He then says he was waiting for "vehicle information" supporting his original articulated unreasonable suspicion that "he wanted to know who he was talking to and who the car belong to." *TT p14, lines 14-15*, not that he was looking up a warrant on a "dangerous" person.

Coltri forgets at preliminary hearing that he was punched in his face, stating Plaintiff "just" made contact "in the front of my body, legs and upper torso area." Upon arrival of the EMT, he forgets he was battered and the EMT records his response to Plaintiff saying she was attacked, as [she was] "resisting arrest."

Coltri plays on explicit and implicit bias consistently, even dabbling with stereotypes of African-American women. He states that Plaintiff was being sarcastic when she asked, "May I help you?" He stereotypically describes the "Angry Black Woman" and he masculinizes her. Plaintiff continues to be a woman with a chest and no breasts. Breasts that no woman would slam

4

into anything, let alone a fully uniformed police officer with a bullet-proof vest, radios, and gun.

…"I had the opportunity to review the evidence, judge the credibility and reliability of the witnesses who have testified and find that there is not sufficient evidence beyond a reasonable doubt for the aggravated battery to the police officer". *Judge Tucker*, TT pg 103, lines 6-11

Judge Tucker, the trier of fact, is specifically referring to Coltri. Plaintiff is not the only person who believes Coltri's story is incredible and perjured. Coltri perjured himself in this Court and the record proves it.

## II. CONFUSION, PRESERVING SELF DEFENSE, RESISTING ARREST

A. The ruling curtailing Plaintiff and her witnesses from telling their stories in full, with no prejudice, not only made the trial unfair, but rendered her counsel ineffective by causing fear and confusion, among other things. Although given rights to speak openly with minimal guidelines under *in limine* orders, during the pre-trial conference, and trial, Plaintiff was unduly limited for reasons in direct conflict with the Court's previous orders.

For example, contrary to the *in limine* order, in reference to Women's All Points Bulletin, Plaintiff was restricted to one sentence at trial, and that sentence did not allow her to truthfully state that she founded the organization. Whereas the order stated that, "However, the Court limits Noel to using this testimony solely as background information <u>and</u> as to her damages, if she can demonstrate a link to her damages and her work with WAPB." *Ellis, In Limine Order* (May 2009). The unfairness and confusion is clear, especially considering, that on the other hand, Bruno Coltri, an individual who is employed as a police officer at the Westchester Police Department has an advantage because he has no need to explain his work; most people know the basic roles and responsibilities of the police.

Plaintiff argues that the *in limine* orders were confusing, and caused her irreparable harm during trial.

B. <u>Plaintiff preserved her right to argue self defense during her criminal trial.</u>

…"Therefore, defendant preserved her self-defense claim on appeal." *People v Noel*, 2102 IL App (1st) 1033302-U.

Plaintiff has always testified to fearing for her life when Coltri attacked her. By limiting Plaintiff's testimony in telling "her story" she was unfairly limited in her ability to fully argue her case. Adding, this district court noted that Plaintiff never had the ability to argue self defense.

…"Finally, assuming that the Illinois Appellate Court's statement that Plaintiff "was not faced with an officer's use of excessive force" qualifies as a factual finding, [which it should not because the Appellate court is not the finder of fact], it was unnecessary to affirmance of Plaintiff's conviction because it was considered in the context of a self-defense claim *<u>that Plaintiff could not make out</u>* even if the appellate court had found that excessive force was used.*"*

*Zagel, Defendants Motion to Dismiss Order,* (March 2013)

Arguing self defense is not necessarily arguing for, or against, excessive force especially since Plaintiff has always said that Bruno Coltri criminally attacked her: only for his lack of video has he not been prosecuted.

…"In *Simpson v. Thomas*, the Ninth Circuit found that it had been reversible error for a district court to exclude testimony of the plaintiff in a Section 1983 action as Heck barred. 528 F.3d 685 (9th Cir. 2008). In reaching their conclusion, they recognized that Heck- and all its progeny – addressed only whether a clain itself is viable, not whether evidence is admissible." *Viramontes v. City of Chicago*, Motion for New Trial, Oct (2014)

Plaintiff argues that she, and all her witnesses, and lawyers, were unduly and severely held to an impossible standard of testimony and presentation of evidence, and she was irreparably harmed at trial.

C. <u>Resisting Arrest</u>

Plaintiff reminds the Court that the resisting arrest statute allows for a person to be convicted of resisting even if the arrest is unlawful. Coltri's perjured testimony in this Court still does not provide any reasonable suspicion or probable cause for his following and/or blocking Plaintiff in the lot.

"…a police stop exceeding the time needed to handle the matter for which the stop was made constitutes an unreasonable seizure under the Fourth Amendment. *US v Wallace*, 937 F.3d 130(2nd Cir. 2019) quoting US v Rodriguez (2006)

Coltri's testifies consistently that Plaintiff followed his order and move her car around the corner. Although he may not have liked the conversation, he consistently testifies it was not criminal, and therefore he should have disengaged.

"…The Fourth Amendment applies to all seizures of the person, including seizures that involved only a brief detention short of a traditional arrest. *Davis v Mississippi*, 394 U.S. 721, 89 S.Ct. 1394, 22 L.Ed.2d 676 (1969); *Terry v. Ohio*, (W)henever a police officer restrains his freedom to walk away, he has 'seized' that person,' id.,at 16,88 S.Ct.,at 1877 and the Fourth Amendment requires that the seizure be 'reasonable.'

At federal trial Coltri testified that because [paraphrase],"no one had ever talked to me that way so I thought she was "dangerous," then admits that Plaintiff was not breaking any law when he followed her, speaks to the fact that he had no reasonable suspicion of criminal activity, and was on a 'frolic of his own' when he followed Plaintiff and seized her, and her vehicle. There is no doubt that he showed authority by placing his car in a manner that lead Plaintiff, (in the light most favorable to the non-moving party), to believe that she needed to submit to his show of authority before she moved her vehicle, or herself, from the lot.

Now that Coltri has testified to looking for a "warrant" it is no stretch of the imagination that he was indeed "restraining Plaintiff's freedom to walk or drive away." Finally, Coltri does testify at preliminary hearing that "his [Officer Newton's] traffic stop was an unrelated matter to mine." PL pg 10, lines 7-8. Coltri testifies to considering his encounter with Plaintiff a stop.

Coltri illegally seized Plaintiff and this Court should reconsider their denial of Plaintiff's claim.

### III. DEFENDANTS REPEATEDLY MISLED THE JURY AND CONTINUED TO IGNORE COURT ORDERS

In addition to the misconduct Plaintiff argues in her statement of facts, Defense counsel did not argue malicious prosecution and equal protection of one, they reargued the aggravated battery and resisting arrest.

This Court specifically stated that the resisting arrest conviction should not be re-argued yet Defense consistently made arguments and references to Plaintiff's conviction for resisting arrest. Defense presented the resisting arrest statute to the Court, and jury, and stated, on record, that it was the definition of aggravated battery.

Additionally, Coltri was able to address and tell his full story without intervention, while Plaintiff and her witnesses were severely limited.

Defense counsel misrepresented Plaintiff's misdemeanor resisting conviction, as a felony resisting conviction, continually stating that Coltri was struck, kicked, hit and harmed as a part of the resisting conviction.

In closing argument, Defense used the term "these people" and even after receiving daily transcripts of testimony, (included in their lawyer fees), they continued to slander Plaintiff and commit fraud when they told the jury that Plaintiff testified that her witness, Pamela Tolbert did not tell her to get back in the car. Although Plaintiff does not have access to these transcripts, from memory, she can say, that she testified that her witness was inaccurate when she said Plaintiff was anything other than concerned about Coltri's behavior and did not speak specifically to Pamela asking her to stay in the car.

### IV. PERMITTING THE ALLEGED AUDIO TAPE OF "MS. NOEL" WAS IN ERROR

Defense counsel surprised Plaintiff, and her lawyers, with an audio tape that an "expert or Sheriff" unbeknownst to Plaintiff, and never presented before or during discovery or depositions, had reviewed and translated without notifying Plaintiff or her lawyers so that they could be involved. Defense stated during trial, without any voice recognition analysis, or confirmation from Plaintiff herself, that the person in the background was indeed Plaintiff. *

*Plaintiff heard the tape and did not recognize the voice as hers. Additionally, she did not hear "come on baby" she heard, "hold on baby."

7

After being ordered by this Court to let the jury determine the translation of the tape, Defense counsel purposely defied the order and told the jury that the person on the tape said, "come on baby". Then they implied that Plaintiff was speaking to Coltri. Timeline and photographic evidence prove that other people were on the scene at the time the tape was being recorded. Plaintiff was pinned to the hood of Coltri's squad car. It is preposterous to claim that Plaintiff would call a man that just attacked her "baby'. It is also preposterous, because Coltri testified that Plaintiff was unable to say one word without cussing and using mf-ing or f-ing.

Plaintiff is not Muhammad Ali and was not dancing around goading a police officer into a fight. And if she had been, Coltri would have testified to it at trial by now. Defense's psychological manipulation pulls at every explicit and implicit bias a jury that lacks an African American can hold. If anything, the alleged audio taping of Plaintiff shows she was not cussing. \*\*

This audio tape and it presentation was extremely prejudicial to Plaintiff's case and was vigorously objected to by her counsel. It should have been barred as evidence of Plaintiff's voice.

### V. NEW EVIDENCE

A. At trial the Assistant State's Attorney (ASA) testified that a charge of felony resisting arrest exists. A felony resisting arrest requires injuries. Although Coltri feigned injuries to which he had no evidence the ASA did not charge Plaintiff with felony resisting.

(720 ILCS 5/31-1) (from Ch. 38., par. 31-1) Sec. 31.1. Resisting or obstructing a peace officer, firefighter, or correctional institution employee (a) a person who knowingly resist or obstructs the performance by one known to the person to be a peace officer, firefighter, or correctional institution employee of any authorized act within his or her official capacity commits a Class A misdemeanor. (a-7) A person convicted for a violation of this Section whose violation was the approximate cause of an injury to a peace officer, firefighter, or correctional employee is guilty of a Class 4 felony

B. The audio tape captures Coltri calling in an "assault" to dispatch, it also captures Westchester's dispatch changing his call for an assault to battery, and Coltri then repeating what was said. Dispatch had no authority to change Coltri's call. Defense counsel misled the jury when saying that *Colti* already called in a battery, this was simply not true.

This fact would explain why Coltri forgot about being punched in his face; is ambiguous when speaking about the breast bump and being struck; did not tell the EMT there was a battery; and after Plaintiff called the EMT and documented her injuries, began the malicious prosecution of a felony battery.

C. It should be noted that the ASA did not consider, or possibly know about the original call for an assault since they did not review the tapes, or speak to Plaintiff, or her witness, before

---

\*\*At criminal trial Plaintiff testifies to screaming after Coltri's attack.

charging a felony aggravated battery and resisting arrest. Plaintiff charges that felony review was improper, possibly due to the holiday, but improper nonetheless.

It should also be noted that no Judge considered Plaintiff's behavior, before the breast bump, assaultive. Judge Tucker, the trier of fact, had the power to reduce Plaintiff's felony charge to a misdemeanor assault and did not. Neither did the Appellate Court, on the contrary, the Appellate Court upheld Plaintiff's right to be "argumentative" and made no mention of her exiting her vehicle to speak with Coltri as an offense.

Defense counsel should have been limited in arguing against Plaintiff's rights to be free and safe from harm and legally exiting her vehicle.

If Plaintiff is granted a new trial, she would like to reinstate her claim against the City of Westchester which she believes was unfairly dismissed.

### VI. PRO SE STATUS

Plaintiff knows she was treated unfairly because of her pro se status.

Discovery that would have been granted, no questions asked, as a part of a 1983 claim against a police officer was denied. Motions to the court, written correctly and incorrectly were denied. *Haines v Kerner,* 404 U.S. 520 (1971) pro se pleadings should be held to "less stringent standards" than those drafted by attorneys.

The expectation that Plaintiff would know all the rules is unreasonable. Her expert witnesses were denied during a status hearing. She asked for a Special Agent with the FBI, and Dr Robinson to testify as experts. She should have been given time to submit their paperwork following the rule since one, and possibly both, individuals had previously testified in federal court as expert witnesses.

Defense failed to coordinate any of her depositions until the Court intervened. Even McCorkle treated Plaintiff unfairly. Defense forced her into a second deposition to discuss a document she filed a motion to find Defense in contempt of court for tampering with it. Defense was allowed every subpoena, more interrogatories than the rule, and other rule breaking while Plaintiff was held to the standard of a lawyer.

Plaintiff knows that the denials of her motions and her pro se status severely limited the outcome of a fair trial.

Plaintiff requests that if she is granted a new trial that she receive all her discovery requests, especially in regards to Coltri's personnel file; orders regarding writing use of force and supplemental reports; that her expert witnesses are allowed; and her motions to find Defense in contempt of court orders are investigated.

## VII. CODE OF SILENCE

Ten years have passed since LaManna and Newton testified, although Plaintiff understand age related memory lapse they is no doubt they both were protecting Coltri.

LaManna was on the force 16 years in 2009 and knows that reports should not be ambiguous, vague and open ended. He also knows that pointing a taser and threatening to tase someone should be noted very specifically in a report and should be followed up with a supplemental report, or a use of force report especially when a felony has been charged against an officer. Sgt LaManna was the supervisor on duty and did not ask Newton to write a supplemental report on the day of the incident or afterwards.

Newton did not see anything because he was behind a building but he also did not threaten Plaintiff with a taser or Pamela would have caught it on the/a photograph. Pamela testified that they were walking together. If she had seen him standing over Plaintiff, threatening her with a taser she would have taken a picture of it without any interference from Newton. It did not occur. Newton walked Pam back to her car; he had no concern about leaving Plaintiff with Coltri. He did not write a use of force or supplemental report, and Coltri did not specifically state what the officers who "helped subdue" Plaintiff actually did. It was purposefully left open for protection.

Newton testified at trial that he may have been out of the vehicle when Plaintiff arrived on the scene. At criminal trial when he was asked, "Was there another vehicle on the scene there?
Not immediately, but as I got back in my car *and* starting writing out a ticket, another vehicle pulled in front of Ms.Tolbert's. TT, pg 30, lines 8-10. Newton was sitting in his car writing Pamela Tolbert's ticket.

Plaintiff's *in limine* motion allows for this bias to be addressed. If granted a new trial Plaintiff asks that she can specifically refer to LaManna and Newton's behavior as a code of silence.

## VIII. INEFFECTIVE COUNSEL

Plaintiff discovered that counsel assigned to her during the settlement conference may not have submitted the proper paperwork outlining Plaintiff's expenses incurred fees, damages and costs.

If granted a new trail Plaintiff asks to correct the record.

Plaintiff reiterates her earlier statements, that her trial counsel was rendered ineffective due to; rulings because Plaintiff was pro se, confusing *in limine* orders, severe restraints on her and her witness' testimony, surprise discovery, new evidence, denied objections, etc. the list is not exhaustive.

10

Plaintiff reiterates that she never approved of the dismissal of her 1st Amendment claim.

## IX. COURTS MOTIONS IN LIMINE AND ARBITRARY RULINGS

A. Plaintiff considers this Courts determination of her emotional damages arbitrary and asks the Court to reconsider.

B. Barring Evidence that Noel was not Hired as a Census Worker because of her Arrest

Defense subpoenaed US Census records, those records should support the letter entered into evidence proving that the Plaintiff lost the job at the Census just because of her charges. The denial of the Census position was before Plaintiff went to trial. Whether Plaintiff was convicted of resisting arrest is moot. Plaintiff submitted this letter as evidence of damages and it should only speak to the totality of circumstances surrounding being arrested and charged, and maliciously prosecuted.

The barring of this document of damages was in error.

C. Not Barring Testimony Regarding Noel's Prior Psychiatric Treatment

Dr Rhone and Dr Robinson testified and agreed that Plaintiff's previous mental health care was irrelevant and did not "exacerbate" any issues in regards to the attack. Although new evidence too, based on the Plaintiff's witness and Defense's expert, it should be barred as irrelevant.

## CONCLUSION

Plaintiff believes that she has established, and should be granted, her right to a new trial by showing that multiple errors occurred at trial, and those errors were so severe they rendered the trial fundamentally unfair. *US v Powell*, 652 F. 3d 702, 706 (7th Cir.2011)(citing *Alvarez v Boyd*, 225 F 3d 820, 824 (7th Cir. 2011)) The cumulative effects of the Court's rulings deprived Plaintiff of his right to a fair trial, *Christmas v City of Chicago*, 682 F. 3d 632, 643 (7th Cir. 2012)

Plaintiff reserves her right to amend this document after it has been filed in a timely manner, with documents of support and possibly affidavits.

DATED: January 14, 2020

Respectfully submitted,

Plaintiff - Appellant Crista E. Noel

By_____
Pro Se by Crista E. Noel

219F. Dodge Avenue
Evanston, Illinois 60202

IN THE UNITED STATES DISTRICT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| CRISTA E. NOEL ) | |
| Plaintiff-Appellant ) | |
| ) | |
| v. ) | |
| ) | No.   1:10-cv-08188 |
| BRUNO COLTRI ) | The Honorable Judge SARA J. ELLIS |
| Defendant - Appellee ) | |
| ) | |
| ) | |

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that she is the attorney for Plaintiff and that she served a copy

of the foregoing on all counsel of record by causing the same to be delivered before the hour of

5:00 p.m. by electronic submission and USPS on January 16, 2017 to the following address:

    Thomas R. Weiler (Atty No. 06184955)
    John A. Masters    (Atty No. 6299434)
    LANGHENRY, GILLEN, LUNDQUIST & JOHNSON, LLC
    Attorneys for Defendants, the Village of Westchester and Officer Bruno Coltri
    33 North Dearborn Street – Suite 1650
    Chicago, IL 60602
    Tel: (312) 704-6700

                                                By_____
                                                Crista E. Noel
                                                Pro Se
                                                219F Dodge Avenue
                                                Evanston, IL 60202-3668
                                                January 16, 2018